[Civ. No. 12404. First Dist., Div. One. Oct. 19, 1943.]

Estate of ALICE K. MURPHY, Deceased. LULA MIGNON MURPHY, Appellant, v. W. S. KENDALL, as Executor, etc., Respondent.

Lula Mignon Murphy in pro. per. for Appellant.

H. W. Coale for Respondent.

WARD, J.—Petitioner and appellant is the daughter of S. S. Murphy, against whom it may be assumed she obtained a judgment about thirty years ago. The judgment has not been made part of the record herein. Respondent, executor of the estate of the widow of S. S. Murphy, has failed to file a brief.

Appellant was permitted to file a transcript on appeal without payment of the established fee, and to file a "typed and hand printed opening brief." Subsequently she filed a document entitled "Motion for Entry of Reversal upon Default of Respondent." This was followed by a "Petition for Ruling upon Default of Executor, and deny Respondent Brief." About one month later there was filed a "Petition to Submit upon Records with Directions to the Clerk of Court to forward to Appellant such Questions as the Court Desires to have answered."

With reference to the last motion, it is not good practice to propound questions to the litigants after an appeal has been submitted for decision unless it appears that the answers will be of assistance in determining the issues. Unfortunately for appellant, the record indicates that further answers would result in complicating the questions already before the court. The other two motions may be determined in accordance with the present "Rules on Appeal" (rule 17b), which provide merely that if respondent's brief is not filed, the case may be submitted for decision on the record.

The present appeal is presented by way of a bill of exceptions. However, the record is in such a state of confusion in many essential respects that this court is unable to follow the attempt of appellant as "protestant," "claimant," "petitioner," or "litigant," represented sometimes by counsel and

at other times appearing "in propria persona" and "in forma pauperis," to present her grounds of appeal.

The first document forming part of the record on appeal, entitled "Appellant's Bill of Exceptions," contains certifications by three judges who took part in the proceedings, Judge M. G. Woodward stating in his certificate: "I am signing the foregoing merely in order that appellant may get her appeal. I cannot certify that it is a 'fair summary' or that it is a bill of exceptions." The next document, the "Clerk's Transcript on Appeal," filed six months after the bill of exceptions, has been certified by the clerk of the court. Instead of the usual certification by the court the following, signed by the trial judge, appears: "The foregoing is apparently offered as a judgment roll. It is merely a copy of certain files, involving matters from which no appeal can be taken. Much of the material had no bearing on an appeal from the decree of distribution." There is also a "Clerk's Transcript on Appeal" "stricken out by Judge M. G. Woodward." Most of the papers stricken from the files are documents offered to the court but not signed. Some of the record is typed; some hand lettered in pen or pencil. Some of the motions herein are accompanied by citations. One motion supported by affidavit is followed by a "Plea for Equity" containing prose and poetry. Its purpose, as stated, is to enable appellant not only to "secure her own," but so that she may blaze "a more rightful way for those who follow."

Appellant's opening brief contains an appendix claimed to include all matter from the clerk's transcript which is referred to in the brief and not set forth in the bill of exceptions.

The appeal in its disordered form might be dismissed for nonconformance with statutory provisions, rules, etc., but it is our conclusion that the ends of justice will be best served if it be considered upon its merits.

Appellant's claim in its origin is apparently based upon a judgment against her father for support. Several proceedings to enforce the judgment were instituted. In *Murphy* v. *Reicks*, 40 Cal.App. 1 [180 P. 15], wherein petitioner and appellant herein appeared as defendant and appellant, in an action to restrain the sale of certain real property, the court, referring to the present petitioner, said (p. 8): "She has filed herein a voluminous brief, prepared, as we are informed,

by herself, unaided by a lawyer, and while therein, for one who has not been an habitual student of the law, she has presented her side of this case with singular clearness and force, it is plainly manifest that (as above declared), so far as this particular case is concerned, the law is against her, and, therefore, her appeal cannot be sustained.'' The decision denied that appellant herein had a lien against the property. Later she filed another action against her father and stepmother in an attempt to enforce the original judgment. The facts of that case—*Murphy* v. *Murphy,* 57 Cal.App. 182 [207 P. 43]—are stated on pages 182-183 as follows: ''From the complaint it appears that plaintiff is the daughter of S. S. Murphy by a former marriage; that on April 26, 1911, she obtained a judgment against him for her maintenance and support in the sum of $15 per month and that the amount due under said judgment is $930, as principal, and $179.91 interest. The complaint then proceeds.'' Thereafter appear references to the transfer to and acquiring of properties by Alice K. Murphy, the wife of S. S. Murphy, as shown by official records, including the family home particularly involved in the present controversy. The court, commenting in that regard, said (p. 185): ''Nor is any fact alleged from which it can be inferred that any transfer to said Alice K. Murphy was fraudulent.'' In a later decision, *Murphy* v. *Murphy,* 71 Cal.App. 389 [235 P. 653], an action to renew a judgment for the maintenance of an alleged dependent daughter to be a lien upon property standing in the name of the wife of the judgment debtor, it was expressly declared that there was no lien against property of the stepmother. This appears to be a final adjudication that the property in dispute is free from any judgment lien on the part of this appellant.

The father, S. S. Murphy, died in 1936. From the various records on this appeal it may be gleaned that appellant appeared in some capacity as contestant to the granting of letters of administration or otherwise, and that her claims were denied. On the present appeal, despite the confused condition of the record, it may be said that appellant is attempting to enforce her judgment against property, by whomsoever held, which she claims belonged to her father.

Alice Murphy, the wife of S. S. Murphy, died testate in May 1939. The executor of her estate was empowered to

sell certain property. From the entire record it appears that appellant herein, as an heir at law of S. S. Murphy, filed a claim in the matter of the estate of Alice Murphy. Subsequently a protest against the sale of the property was filed. However, at the sale appellant herein entered a bid, evidently upon the theory of setting off her alleged claim against the purchase price. Subsequently she protested the confirmation of the sale and also renewed her bid and her creditor's demand as an heir at law of the estate of S. S. Murphy, in the matter of the estate of Alice Murphy, upon the theory that the estate of the former was still pending. Subsequently an amendment to the protest of sale of the real property was filed, in which it appears that an action had been commenced "against W. S. Kendall, Administrator of above Estate [Alice Murphy]; said action being founded upon his rejection of petitioner's demand as creditor set forth in said protest and his rejection of her claim as heir to the Estate of S. S. Murphy, Deceased." On November 22, 1939, the sale of the property to a third party was confirmed.

Thereafter a motion to vacate the previous order confirming sale of real property was made, the ground alleged being that the court had been informed that the property had been cleared of any claim of petitioner, whereas it appeared that the claim had not been adjudicated. This may be the legal crux of the case; but in view of previous decisions that the property was free from the judgment lien in that the transfer of property from S. S. Murphy to his wife was free from fraud, it does not seem to be necessary to consider the question. In *Murphy* v. *Reicks, supra*, the court said (pp. 7-8): " . . . the law, both substantive and remedial, must be applied according to a well-defined plan to secure that uniformity of operation so necessary to a well-poised system of jurisprudence, and the courts can do no more or no less than to administer the first in the manner prescribed by the latter." (*Murphy* v. *Murphy*, 71 Cal.App. 389 [235 P. 653]; *Murphy* v. *Murphy*, 57 Cal.App. 182 [207 P. 43].)

The main purpose in the present appeal may be reasonably construed to be an effort to demonstrate that at least one of the judges who participated in recent litigation involving petitioner's claim was biased and prejudiced against her.

It appears in a "Motion to Transfer" the cause that in the estate of S. S. Murphy an appeal had been taken. The

purpose of the motion was to secure "the designation of an outside judge for polemical matters pending appeal" which appellant designates as "ex party and controversial." A petition also was presented "to secure unbiased judge for ruling upon motion to vacate order of court confirming sale of real property." Petitioner set forth that she deemed it "equivalent to throwing away her said motion to bring the same before said judge [Honorable M. G. Woodward] in said department." Therein she reiterated a waiver of "any disqualification which might appear against HONORABLE D. M. YOUNG." It is alleged that in the hearing before Judge Woodward "once only has [petitioner] said anything in a personal way to which said Judge has visably taken offense and that was at the filing of her first action in 1936, petitioner referring to the time and a circumstance when said Judge was a reporter upon a local News Paper, Petitioner requested said reporter to omit items concerning her matter involving her maintenance action against her father, as the publicity was a severe trial to her, And at said time said reporter informed petitioner that furnishing readable copy for the press was his living.

"THAT, at one hearing in said No. 14417, wherein the attorney for above Executor, namely John R. Cronin misstated a matter which transpired long before petitioner's Counsel was associated herewith and upon which he apparently was not informed, petitioner undertook to set the facts according to record before said Court. Said Judge informed petitioner in undertaking to secure permission to speak on said ground she was in contempt of Court and ruled against her. [Note that at this time petitioner was represented by counsel.]

"THAT, said Judge, before hearing upon her motion for rehearing upon contest of will, ridiculed the same in petitioner's face."

The affidavit of petitioner, answered under oath by Judge Woodward denied the incidents referred to and further denied that "he is at present, or ever has been, in a prejudiced state of mind toward said petitioner or her above-entitled matter or any other of her matters, whether now pending or already determined by said Judge." Petitioner thereupon filed an answer to the answer of Judge Woodward in which she characterized the Judge's actions as playing "with her like a cat with a mouse," and referred to "his long record

of adverse rulings in her matters as set forth'' previously. Thereafter it was stipulated that the question of the disqualification of Judge Woodward could be heard and determined by Honorable B. C. Hawkins, a judge of another county, who determined that the charges of bias and prejudice were untrue and unfounded. Thereafter a motion for rehearing of the previous motions connected with the bias and prejudice charge and a ''Bill of Errors'' were filed, in which Judge Hawkins was attacked upon the ground that he filed a written ''determination'' of the question on the same day the hearing occurred, and that she had not been able to call his attention to certain previous records. The motion for rehearing was denied by Judge Hawkins and petitioner filed a notice of appeal from the order denying ''bias and prejudice'' and from the order denying rehearing. This was followed by a ''Supplemental Motion Disqualifying Judge M. G. Woodward'' based upon a motion for rehearing of an order confirming sale of certain property in the estate of S. S. Murphy. Judge Woodward filed a verified answer, and appellant herein followed with an ''Amendment to Supplemental Motion.'' Motions to strike certain papers from the files appear in the record and a memorandum opinion by Judge Woodward relating the history of the litigation. Petitioner filed an affidavit replying to the ''memorandum opinion'' in which in substance the allegations of bias and prejudice are repeated. Thereupon a notice of appeal was filed from the order ''denying motion to vacate a certain order of Court confirming sale of real property on the 22nd day of November 1939, and appeals from all orders and findings of Court herein determining that the said Judge M. G. Wood- ward is not disqualified by reason of bias or prejudice to sit in above matter.'' The affidavit in reply to the memorandum opinion contains, as the court held, certain contemptuous language, was stricken from the files and an order made denying petitioner the right to appear ''informa pauperis.'' Appellant filed a lengthy reply and an appeal from an ''order served upon her the 12th day of June 1940, wherein her second petition to pursue appeal in forma pauperis was denied. (Said appeal being from an order by said Judge denying motion to set aside confirmation of sale of certain real property herein) And from all orders, determinations or memorandums of Court finding said Judge not disqualified by rea-

son of bias or prejudice to sit on polemical matters herein or such matters relative hereunto.''

Petitioner requested appointment by the Judicial Council of a judge to sit on motions to disqualify Judge Woodward for alleged further bias. Evidently the selection had been given consideration whereupon petitioner filed an affidavit containing the following: '' . . . it becomes necessary for petitioner to file matter disqualifying each of said Judges i. e. the HONORABLE B. C. HAWKINS of Stanislaus County, the HONORABLE G. B. HJELM, Stanislaus County the HONORABLE A. L. PIEROVICH of Amador County, the HONORABLE J. A. SMITH of Calaveras County, and pray that each of said Judges be found disqualified to preside at said hearing.'' Other affidavits were filed and a request made that the four judges should not appear. This was in the form of a proposed waiver. Judge Hawkins replied in part as follows: ''At my last appearance in Stockton you insulted and abused me in open court and I do not intend to sit in any more cases in which you are interested unless I am compelled to do so.''

Eventually Honorable George H. Thompson, a judge of El Dorado County, was assigned by the Judicial Council to hear the issues raised in the charges and the answer. After a lengthy hearing Judge Thompson decided ''that said Hon. M. G. Woodward is not biased or prejudiced in any matter against said Lulu Mignon Murphy, either personally or as a litigant in his court.'' A petition for rehearing was filed. Therein it appeared that, including the original proceeding, seven judges from outside counties had been called to San Joaquin County to hear various phases of the litigation. Judge Thompson denied the motion and petitioner filed a ''motion to vacate'' the order denying a rehearing based upon the claim that through mistake in dates she did not appear at the time set for the rehearing. The motion was denied. Thereupon appellant filed a ''Motion to Open Records and Hearing upon Supplemental Matter Disqualifying Judge M. G. Woodward.'' This caused the executor of the estate of Alice K. Murphy, through his attorney, to file a notice of motion to strike pleadings from the files and adjudge pleader guilty of contempt of court. This was followed by a ''Notice of Motion to Strike Executor's 'Motion to Strike Pleadings, Adjudge Pleader in Contempt of Court', and Find Authors Thereof Answerable to Petitioner.'' Judge Thomp-

son denied the motion "to open record," all motions to strike and the motion to adjudge appellant guilty of contempt.

Appellant filed "Objections to issue of Order of Distribution in Estate" of Alice K. Murphy. An order settling the first and final account and decree of distribution was signed September 26, 1941, and the last notice of appeal appearing in the record was filed. The appeal is from the "final order of distribution" and from specified orders, denials of motions to vacate orders, rulings and judgments growing out of the claimed disqualification of Judge Woodward.

 As heretofore stated, the appeals, under whatever designation, are directed to alleged error in the orders finding Judge Woodward to be free from bias and prejudice in his conduct of the proceedings. Certainly as a matter of law upon the record presented, we are unable to hold to the contrary. From the facts recited in the affidavits of Judge Woodward, also from evidence, part of which appears in the record introduced, the orders of Judges Hawkins and Thompson must be upheld. In addition it appears that prior decisions of the appellate courts, previously referred to, and failure to adjudicate rejected claims, preclude appellant from participation in the property of the estate of Alice K. Murphy.

The motion for entry of reversal upon default of respondent is denied. The second motion previously referred to, insofar as it requests this court to submit questions which it may desire to have answered is denied. The judgments, orders and decrees appealed from, so far as the present record is concerned, on the grounds stated in the notices of appeal and in the brief, are affirmed.

Peters, P. J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied November 18, 1943, and appellant's petition for a hearing by the Supreme Court was denied December 16, 1943.