[Civ. No. 20299.   Second Dist., Div. One.   Dec. 7, 1954.]

LESLIE A. LEWIS et al., Respondents, v. CHARLES CHESTER WITCHER et al., Defendants; GEORGE SMITH MANN, Appellant.

. Braeme E. Gigas for Appellant.

Brand & Cooper, Ralph A. Fields and Leon M. Cooper for Respondents.

WHITE, P. J.—This appeal was taken by defendant George Smith Mann, for himself alone, from an order granting motion to set aside a default judgment in favor of said appellant alone upon his cross-complaint, and to file respondents' answer to cross-complaint, copy of which was attached to their notice of motion.

The instant action is against appellant and defendant Witcher, both of whom were licensed real estate agents, for breach of contract and for money had and received. Defendants filed their joint answer on August 25, 1952. October 2, 1952, appellant for himself alone filed a substitution of attorneys and on December 26, 1952, he filed notice of motion for leave to file an amended answer, counterclaim and cross-complaint. The hearing on that motion was continued from the date first set, because of the absence from the city of respondents' counsel. After his return, on or about January 15, 1953, he telephoned appellant's counsel and told him he would stipulate that the amended answer, counterclaim and cross-complaint might be filed. In the same conversation counsel discussed the fact that respondents were in Siam and their agent was in New York, that "there was a good chance that plaintiffs would dismiss their complaint," and appellant's counsel "agreed that the matter of obtaining a dismissal be pursued, that no further proceedings would or need be taken in this matter until the question of the granting of a voluntary dismissal was determined."

January 16, 1953, appellant's motion was granted, notice of ruling on motion was mailed to respondents' attorneys, and on January 23, 1953, appellant's amended answer, counterclaim and cross-complaint were served by mail and filed. The counterclaim seeks to recover: (1) $4,484.13, real estate commission; (2) $4,484.13 for services, work and labor performed; and (3) $5,000, the reasonable value of services performed. The cross-complaint seeks to recover: (1) $4,484.13, fee for services rendered in the sale of real estate; (2) $5,000, the reasonable value of services performed; and (3) $5,000 due under an exclusive listing agreement with appellant as a real estate broker. All allegations of the counterclaim must "be deemed controverted," while allegations of the same matters in the cross-complaint must "be taken as true." (Code Civ. Proc., § 462.)

February 9, 1953, request for entry of respondents' default for their failure to answer the cross-complaint was filed, and on February 18, 1953, respondents' default was duly entered. Respondents' counsel was not informed of appellant's intention to request default, that he had filed such request, or that default had been entered.

March 12, 1953, appellant's notice of motion for transfer of the cause to the Pasadena Department was served and filed. Respondents' counsel appeared in court on March 17th

in opposition to appellant's motion for transfer. The following is quoted from the affidavit of appellant's counsel which was filed in opposition to the motion for the order from which this appeal is taken: "Judge Barnes, in open court, severely rebuked Mr. Fields for not having filed an Answer to the Cross-complaint *and suggested he get busy and do so.* . . . He was rebuked by Judge Barnes on March 17th." (Emphasis added.) From the record, it does not appear that, even at the hearing on March 17, 1953, when Judge Barnes "suggested he get busy" and file an answer to the cross-complaint, respondents' counsel was informed, either by Judge Barnes or by appellant's counsel, that default had been requested or entered, or that counsel intended to take a default judgment on his cross-complaint. The trial of the action had been set for September 23, 1953. March 31, 1953, appellant was awarded a default judgment on his cross-complaint for: (1) $4,484.13 on the first cause of action; and (2) $2,000 on the second cause of action.

While the record shows prompt service upon respondents' counsel of formal notice of the rulings upon appellant's motions for permission to file his own amended answer and cross-complaint and for transfer of the action to the Pasadena Department, one of which rulings was made upon consent and the other in the presence of respondents' counsel, no notice of the entry of default or the time of the hearing on the cross-complaint was given.

From the record before us, counsel's first knowledge that default was contemplated may have been May 13, 1953, the date of his notice of motion to set aside a default and to file an answer.

Section 473 of the Code of Civil Procedure provides in part that "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment or order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. Application for such relief must be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken. . . ."

Respondents' application for relief was accompanied by a copy of their answer to the cross-complaint, and a good defense to the cross-complaint was pleaded by the proposed answer. The application was made well within six months.

Nevertheless, appellant urges that the order was an abuse of the trial court's discretion and that it should be reversed for two reasons: (1) Respondents' mistake, inadvertence, surprise or neglect was not excusable; and (2) The application for the relief granted was not made within a reasonable time.

Since the record before us fails to show what, if any, time elapsed between respondents' discovery that a default judgment had been taken and the filing of the notice of motion to set aside the default and permit the filing of their answer to the cross-complaint, it cannot be held that the application for the relief granted was not made within a reasonable time.

As authority for his contention that respondents' mistake, inadvertence, surprise or neglect was not excusable, appellant relies upon the following decisions, in each of which the order of the trial court setting aside a default judgment was reversed on appeal and held to have been an abuse of discretion.

*Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 527-528 [190 P.2d 593], where a secretary, misunderstanding her instructions, filed the complaint and summons in defendant's office instead of sending them to defendant's attorney, and "the day following the president's receipt of notice from defendant's attorney regarding the taking of the default judgment, the papers served upon defendant's respective officers were forwarded to the attorney in prompt correction of the prior oversight." On motion to set aside the default, the trial court held that the delay until receipt of the notice of default was "satisfactorily explained," but there was "an unexplained delay" of almost three months "after full knowledge of the entry of the default."

*Bailey* v. *Taaffe,* 29 Cal. 422, 423-425, from which the following excerpts are quoted: "It is true . . . that orders like the present, in legal parlance, rest very much in the discretion of the Court below, and will not be disturbed by this Court unless we are satisfied that the order is so plainly erroneous as to amount to an abuse of discretion. (Citation.) . . . If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other. . . . There is no pretense of mistake, inadvertence, or surprise in the affidavit in this case. . . . no reason is given why, if more time was required, either on account of the complications suggested, or on account of the necessary absence of

counsel, an application to opposite counsel, or if denied by him, to the Court, for an extension of time was not made. . . . There is, therefore, no pretense but that an extension of time could have been readily obtained from one source or the other had an application been made, and there is no pretense that an opportunity to make the application was, from any cause, not afforded."

*Shearman* v. *Jorgensen*, 106 Cal. 483, 485 [39 P. 863], where the court said: "The reasons, and the causes, and the excuses for the inadvertence are the matters which concern the court, and these are not stated. Inadvertence in the abstract is no plea upon which to set aside a default. The court must be made acquainted with the reasons for the inadvertence and, if satisfactory, will act upon them and relieve from burdens caused by them; but, if the inadvertence is wholly inexcusable, as if it arises from gross negligence, the court will not look upon it kindly, and will have none of it." The "mistake" in that case was the attorney's belief that, because service upon him was by mail, he was not required to pay any attention to a notice that his demurrer had been overruled and he had ten days within which to answer.

*Weinberger* v. *Manning*, 50 Cal.App.2d 494, 498 [123 P.2d 531], where appellant's "neglect turned into contempt of judicial process by her inaction." Appellant was advised by a friend, by the county clerk, and by two attorneys separately consulted by her that she must employ counsel and file a proper answer, unless she knew how to take care of it for herself. She deliberately did nothing about her defense until execution had been levied upon her bank deposits.

*Elms* v. *Elms*, 72 Cal.App.2d 508 [164 P.2d 936], where an order vacating a judgment annulling defendant's marriage was reversed. Defendant, after eight days' deliberation, had verified and returned to his wife an answer, together with a writing signed by him authorizing a certain attorney to file the answer and "to stipulate with opposing counsel that the matter may be set down for trial in my absence and that the same may be heard as a default case." Notwithstanding defendant's said agreement, he was promptly advised of the date of the trial and could have been present but was not. The appellate court, at page 513, said that to vacate the default in this case "would be to grant a new trial at the capricious demand of a defendant who was either grossly negligent or had changed his mind after the judgment."

None of the cases cited by appellant is analogous to

the one now engaging our attention on this appeal. In none of them had the defaulting party filed any verified pleading in the action. In none of them were the allegations of a cross-complaint, upon which judgment had been given by default, substantially the same as the allegations of a counter-claim filed at the same time and automatically deemed denied. In none of them had the court set a future time for the trial of the same issues raised by the complaint, answer and counterclaim. In none of them had the pleading upon which default was taken been served upon an attorney whose clients were in Siam. In none of them had the party who took the default been permitted to file an amended answer, counter-claim and cross-complaint some five months after his answer had been filed. In none of them was there a telephone agreement between counsel "that no further proceedings would or need be taken in this matter until the question of the granting of a voluntary dismissal was determined." And, in none of the cited cases did counsel for the party awarded the default judgment serve notice of proceedings which took place before and after the default proceedings and maintain silence as to his intention to take a default.

■ "It is a rule as familiar as any to be found in the books that an application to vacate a default under section 473, Code of Civil Procedure, is addressed to the sound discretion of the court and will not be disturbed except in a case of manifest abuse of discretion. Such long established rules should be consistently and impartially respected." (*Gudarov* v. *Hadjieff*, 38 Cal.2d 412, 418 [240 P.2d 621].)

Under the circumstances of this case, the granting of the motion to vacate the default was not an abuse of discretion.

The order is affirmed.

Doran, J., and Drapeau, J., concurred.